FILED
SUPERIOR COURT
OF GUAM

2022 JUN 23 PM 4:28

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| PEOPLE OF GUAM, | ) | CRIMINAL CASE NO. CF0058-21 |
| | ) | GPD Report No.: 20-16248 |
| | ) | |
| vs. | ) | |
| | ) | DECISION AND ORDER |
| | ) | RE: DEFENDANT'S MOTION TO |
| GLENN JESUS PAULINO | ) | COMPEL DISCOVERY |
| DOB: 07/26/1963 | ) | |
| | ) | |
| | ) | |
| | ) | |

## I.  INTRODUCTION

This matter came before the Honorable Judge Maria T. Cenzon on Defendant Glenn Jesus Paulino's (the "Defendant") Motion to Compel Discovery (the "Motion"). The Defendant is represented by his counsel, Attorney William (Bucky) Brennan. The People of Guam are represented by Assistant Attorney General Sean Brown. Having reviewed the pleadings, the record, and relevant law, the Court now issues the following Decision and Order GRANTING Defendant's Motion to Compel, subject to the limitations set forth specifically herein.

## II.  BACKGROUND

A minor allegedly found explicit media of herself on the Defendant's phone. Magistrate's Compl. Authorities then executed a search warrant and material allegedly constituting Child Pornography was found on Defendant's phone. *Id.* As a result, the Defendant is charged with Possession of Child Pornography (as a 2nd Degree Felony), in violation of 9 GCA § 25A202(a)(1) and (c).

On or about June 15, 2021, as part of discovery, the Defendant requested from the People *inter alia:* (1) the opportunity to review the alleged child pornography material in a privileged setting and (2) Cellebrite or Magnetic Axiom reports from any confiscated devices. Def.'s Decl. ¶ 3. (Feb 15, 2022). The People responded the next day that the reports had already been provided and instructed the Defendant to contact an investigator from the Office of the Attorney General (the "OAG") to arrange viewing the alleged child pornography material. *Id.* at ¶ 4. That same day, the Defendant refuted the claim that Cellebrite or Magnetic Axiom reports had been received. *Id.* at ¶ 5. Defense also contacted an OAG investigator pursuant to the People's instruction. *Id.* at ¶ 6. The Defense followed up twice over the next five months, without any response from the People. *See Id.* at ¶ 7. After much back and forth, the Defendant finally gained access to the alleged child pornography material on January 21, 2022. *Id.* ¶ 10. However, the Defendant and his counsel were only able to view the material at the Guam Police Department (the "GPD") Domestic Assault Response Team ("DART") office in the company of three foreign parties to the Defendant: Detective M.J Raval and two individuals from the Office of the Attorney General. *Id.* at ¶ 10. The Defense did not touch or operate the computer from which the material was being demonstrated. *Id.* At the time of filing, the Defense had still not received a Cellebrite or Magnetic Axiom report. *Id.* at ¶ 11.

The Defendant alleges that reviewing the material in the company of three government officials did not allow for meaningful review. Def.'s Br. at 5 (Feb. 15, 2022). The Defendant moves this Court to compel the People to provide a mirror image drive and the ability to use the government facilities where the material would be stored in a privileged setting. *Id.* The Defendant also alleges that the People are mandated to provide the Cellebrite or Magnetic

Axiom reports pursuant to Section 80.70(a)(4) and (7)[1]. *Id.* at 6. The People rely on *United States v. Agurs*, 427 U.S. 97, 107 (1976) to counter that Brady and 8 GCA § 70.15 only require the prosecution to disclose favorable evidence to the Defendant upon a showing of materiality. People's Br. at 1 (Mar. 1, 2022). In response to the Defendant's specific discovery requests, the People seem to concede the Cellebrite or Magnetic Axiom reports are due and state vaguely that Detective Raval believes all discovery in their possession has already been given. *Id.* at 2. The People have not unequivocally stated whether Cellebrite or Magnetic Axiom reports exist, or do not exist. The Government opposes the Defendant's demand for a mirror hard drive and the ability to view the material in a privileged setting, stating that the GPD cannot adhere to such a request. *Id.*

## III.   DISCUSSION

The Defendant partly supports his discovery demands by relying on the Adam Walsh Child Protection and Safety Act (the "Walsh Act") as codified in 18 U.S.C. § 3509(m). However, this reliance is misplaced. 18 U.S.C § 3509(m) is found within Part II of Title 18, dedicated to "Criminal Procedure." 18 U.S.C. § 3509(m) is a federal statute outlining the federal criminal procedure to be followed in federal courts. *See United States v. Knellinger*, 471 F. Supp. 2d 640, 643 (E.D. Va. 2007) (finding 18 U.S.C. § 3509(m) constitutional because congress has authority to enact statutes dealing with federal rules of criminal procedure.). As such, it does not govern the procedures followed by the Superior Court of Guam. *See O'Such v. State*, 423 So. 2d 317, 319 (Ala. Crim. App. 1982) ("The federal law controls, of course, as to procedure in federal courts, and the state law controls as to procedures in state courts.

---

[1] The Defendant cited to "Section 80.70(a)(4) and (7)" in support of his argument. Def.'s Br. at 6. The Court assumes an oversight occurred and the Defendant intended to cite 8 GCA § 70.10(a)(4) and (7) since he does so at length at other points in his brief and, to this Court's knowledge, "Section 80.70(a)(4) and (7)" does not exist.

Otherwise, turmoil results."). A plethora of jurisdictions have thus declined to follow the Walsh Act in lieu of their own local criminal procedures. *State v. Scoles*, 214 N.J. 236, 256 (N.J. 2013) ("The Adam Walsh Act is limited by its own terms in subsection (m) to federal prosecutions."); *State v. Norris*, 236 P.3d 225, 226 (Wash. Ct. App. 2010) (declining to apply the Walsh Act after finding it "does not preempt Washington's criminal discovery rules."); *State ex. Rel. Tuller v. Crawford*, 211 S.W. 3d 676, 679 (Mo. Ct. App. 2007) (holding that the section 3509(m) "appears to be a procedural provision applicable to criminal prosecutions in federal courts."); *See Commonwealth v. Ruddock*, 26 Mass. L. Rptr. 175 (Mass. Super. Ct. 2009) (granting defendant's motion to compel discovery under Massachusetts' discovery statutes instead of the Walsh Act). In congruence, this Court shall analyze Defendant's Motion to Compel Discovery under the lenses of Guam's laws and criminal procedures and not the Walsh Act. *Tuncap*, 1998 Guam 13 ¶ 19 ("[W]hen disputes arise, Guam's discovery statutes must be considered and the articulated requirements be met before disclosure is required.").

8 GCA §§ 70.10-70.80 (2019) constitute Guam's discovery statutes and they are to be interpreted "liberally" and "broadly." *People v. Laxamana*, 2001 Guam 26 ¶¶ 39-40. The Court in *Laxamana* found support within Guam's discovery statutes that declare "the state has no interesting in denying the accused access to all evidence that can throw light on the issues in the case...." *People v. Riser*, 47 Cal. 2d 566, 586 (Cal. 1956), *quoted in* 8 GCA ch. 70 note. The Supreme Court of Guam has elegantly illustrated how these statutes work congruously: First, "8 GCA § 70.10(a) and (b) must be looked to for guidance." *Tuncap*, 1998 Guam 13 ¶ 18. Then, "[i]n situations where discovery is not covered under section 70.10, the defendant may obtain other discovery upon a showing: 1) of materiality to the preparation of his defense; and 2) the request is reasonable." *Id.* at ¶ 16 (citing 8 GCA § 70.15). While this Court "possesses

discretion to order the prosecuting attorney to disclose relevant material and information not covered by section 70.10," it can do so only after "weigh[ing] the substantial risk of physical harm, intimidation, bribery, economic reprisals, unnecessary annoyance or embarrassment that may result to any person against the usefulness of disclosure to the defense." *Id.* (citing 8 GCA § 70.15(b)).

At the crux of this issue are two important but perhaps contravening interests. The Defendant has due process rights, which includes the right to a fair trial and the right to adequate representation. *See Strickland v. Washington*, 466 U.S. 668, 684–85 (1984) ("The Constitution guarantees a fair trial through the Due Process Clauses . . . ."); *Kimmelman v. Morrison*, 477 U.S. 365, 392-93 (1986) (Powell, J., concurring) ("As *Strickland* makes clear, the right to effective assistance of counsel is personal to the defendant, and is explicitly tied to the defendant's right to a fundamentally fair trial . . . ."). Meanwhile, the People have an interest in safeguarding potential child pornography victims from further harm or exposure. To be certain, the People's concern is merited. Victims are often scarred by the burden of knowing their material remains discernible:

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

*New York v. Ferber*, 458 *U.S.* 747, 759 n. 10 (1982) (quoting David P. Shouvlin, *Preventing the Sexual Exploitation of Children: A Model Act*, 17 *Wake Forest L.Rev.* 535, 545 (1981)).

Notwithstanding these considerations, a defendant's right to a fair trial cannot be usurped no matter how egregious the accusations against him may be. Consequently, the Court delicately undertakes the task of determining whether to grant the production of the disputed

materials, seeking guidance in Guam's discovery statutes and applicable law as it balances the parties' competing interests.

## A. The People's reliance on Brady is inapposite.

In its two-page opposition to Defendant's Motion, the People oppose granting the Defendant private access to the material and a mirror image hard drive and rely solely upon the U.S. Supreme Court's holding in *Brady v. Maryland*, 373 U.S. 83 (1963). The People argue that because the material which is the subject of Defendant's Motion is not exculpatory, the People have no obligation to produce it. This reading of *Brady* is extremely narrow and erroneously absolute. *Brady* is a constitutional due process requirement that is codified in 9 GCA § 70.10(a)(7), a very specific section and not alone representative of Guam's discovery statutes. *See Tuncap*, 1998 Guam 13 ¶ 17 (stating that "section 70.10(a)(7) adopt[ed] the mandate originally articulated in *Brady v. Maryland* . . . ."; *See also People v. Flores*, 2009 Guam 22 ¶ 60 ("The protections afforded by section 70.10(a)(7) are equal to and not greater than those afforded by the constitutional guarantee articulated by *Brady* and its progeny.")

In *People v. Orallo*, when the Supreme Court of Guam ruled that the evidence in question there was not exculpatory, the court did not at the point finalize its analysis and conclude the evidence must not have been provided to the defendant. Instead, the court stated the evidence was "not discoverable under section 70.10(a)(7)" and continued to analyze whether it was discoverable under other relevant statutes such as 70.10(a)(1). *People v. Orallo*, 2004 Guam 5 ¶¶ 12-13. The Court did so under the understanding that other discovery statutes "expand[] discovery beyond *Brady* evidence." *Id.* at ¶ 13. *See, e.g., State v. Brown*, 335 N.W. 2d 542, 546 (Neb. 1983) ("In the wake of *Brady* the Federal Rules of Criminal Procedure were revised in 1966 so that discovery in criminal cases was broadened and liberalized."). By the

same token, this Court finds that the alleged child pornographic material and Cellebrite or Magnet Axiom reports are not necessarily discoverable per *Brady* as codified in 8 GCA § 70.10(a)(7), but could be, and as discussed below, *are* discoverable under other applicable Guam discovery statutes and law.

**B. The People must provide the Defendant's Counsel with a mirror image hard drive.**

8 GCA Chapter 70, in relevant part, reads as follows:

**§ 70.10. Matters Generally Discoverable; Prosecutors' Obligations.**
(a) Except as otherwise provided by §§ 70.20 and 70.30, at any time after the first appearance upon noticed motion by the defendant, the court shall order the prosecuting attorney to disclose to the defendant's attorney or permit the defendant's attorney to inspect and copy the following material and information within his possession or control, the existence of which is known, or by the exercise of due diligence may become known to the prosecuting attorney:

. . .

> (4) any book, paper, document, photograph or tangible object, which the prosecuting attorney intends to use in the trial or which was obtained from or belonged to the defendant;

. . . .

**§ 70.15. Other Matters Discoverable Upon Good Cause Showing.**
(a) Except as otherwise provided by this Section and §§ 70.20 and 70.30, upon noticed motion by the defendant and a showing of materiality to the preparation of his defense and that the request is reasonable, the court in its discretion may order the prosecuting attorney to disclose to the defendant's attorney any relevant material and information not covered by § 70.10.

Although there is no Guam Supreme Court precedent upon which this Court may currently rely, the Court finds that cases from other jurisdictions with virtually identical criminal discovery procedure statutes are instructive. In similar motions to compel hard drive copies of alleged child pornography, the Supreme Court of Washington ordered their

production. *State v. Boyd*, 160 Wash. 2d 424 (Wash. 2007). While the Supreme Court of Washington ruled on their motions to compel discovery based on Washington's discovery statutes, those statutes are almost identical to Guam's discovery statutes.[2] This Court therefore finds the Supreme Court of Washington's analysis in *Boyd* to be not just instructive, but persuasive, when applying Guam's discovery statutes to the case at hand. *People v. Camacho*, 2015 Guam 37 ¶ 25 ("We may look to the persuasive authority of case law interpreting similar statutes for guidance."); *Amerault v. Intelcom Support Servs., Inc.*, 2004 Guam 23 ¶16 ("Guam courts have considered courts of other states interpreting statutes similar to the law of Guam to be persuasive authority.").

In granting the motions to compel hard drive copies of the material, the court in *Boyd* found CrR 4.7(a)(1)(v) to be dispositive. *Id.* at 432 ("This rule could not be any clearer in establishing what the State must disclose, and this is precisely the type of evidence involved in these cases."). Guam's equivalent statute, 8 GCA § 70.10(a)(4), reads almost verbatim. Importantly, Guam's discovery statutes do differ in that they *explicitly* state the Defendant is entitled to a copy of the material. 8 GCA § 7.10 ("[T]he court shall order the prosecuting attorney to disclose to the defendant's attorney or permit the defendant's attorney to inspect and *copy* the following material and information within his possession or control . . . .") (emphasis

---

[2] For comparison, Rule 4.7 titled "Discovery", as applied in *Boyd*, reads as follows in pertinent part:

**(a) Prosecutor's Obligations.**

(1) Except as otherwise provided by protective orders or as to matters not subject to disclosure, the prosecuting attorney shall disclose to the defendant the following material and information within the prosecuting attorney's possession or control no later than the omnibus hearing:

. . .

(v) any books, papers, documents, photographs, or tangible objects, which the prosecuting attorney intends to use in the hearing or trial or which were obtained from or belonged to the defendant; and

. . . .

**(e) Discretionary Disclosures.**

(1) Upon a showing of materiality to the preparation of the defense, and if the request is reasonable, the court in its discretion may require disclosure to the defendant of the relevant material and information not covered by sections (a), (c) and (d).

added). In their appeal, the State in *Boyd* argued that the trial judge erred by ordering copies without analyzing whether the alleged child pornography was material and whether the defendant's request to obtain copies was reasonable. *Boyd*, 160 Wash. 2d at 437. The Supreme Court of Washington responded that "[t]o require this showing is to ignore the inherent materiality of the disclosure mandated by CrR4.7(a). Disclosure is required in large part because the prosecutor intends to use the evidence in the 'hearing or trial.' It is this purpose that explains the materiality of the defendant's requests." *Id.* (quoting CrR4.7(a)(1)(v)). This coincides with Guam's discovery statutes as interpreted by the Supreme Court of Guam in that an analysis of a request's materiality and reasonability is only needed "[i]n situations where discovery is not covered under section 70.10." *Tuncap*, 1998 Guam 13 ¶ 16. This Court therefore finds that a mirror image hard drive copy of the alleged child pornography material is inherently material and shall be provided to the Defendant pursuant to 8 GCA § 7.10(a)(4). However, production of this mirror image drive shall be limited as set forth herein, *infra*.

## C. The Defendant shall examine the material in a private setting.

The Defendant also requests the opportunity to review the material privately, in "a Government-controlled facility, [i]n an environment where attorney-client privilege applies. . .." Def.'s Br. at 7. On January 21, 2022, the Defendant and his counsel viewed the material in a room approximated at 5 feet by 10-14 feet, at the GPD DART office, in the presence of three prosecution agents: GPD Detective M.J. Raval and two individuals from the OAG. *Id.* at 3.[3] The

---

[3] The People have not yet filed its Witness List and the Court observes that Detective M.J. Raval has testified before this Court in cases involving Criminal Sexual Conduct charges. It is unknown whether Detective Raval is a witness in this case; however, if she is a witness, her presence in the room while the Defendant and his counsel were reviewing the material is also of great concern to the Court. The Court's original Criminal Trial Scheduling Order set a deadline of April 12, 2021 on which all motions and witness lists by both Defendant and Prosecution are due. *Crim. Trial Sched. Order* (Mar. 19, 2021). This was subsequently amended to February 22, 2022. *Crim. Trial Sched.*

People's glib response to Defendant's protest concerning this ineffective review is that the Defendant is simply "unsatisfied with the accommodations." People's Br. at 2. The Court finds that such a constrained review of potentially material evidence while under the supervision of individuals who are part of the prosecution team constitutes a violation of Defendant's due process rights. In so finding, the Court relies upon the holding of the U.S. Supreme Court in *Wardius v. Oregon*, 412 U.S. 470 (1973).

In *Wardius*, the Supreme Court found unconstitutional an Oregon statute requiring the defense to disclose details about its case but not requiring reciprocal discovery obligations on the Government, reasoning that such an imbalance in discovery procedures violates due process requirements. The High Court held "that in the absence of a strong showing of state interests to the contrary, discovery must be a two-way street." *Id.* at 475. Guam's discovery statutes similarly advance notions of fairness and balance, contrary to the People's position. *See* 8 GCA ch. 70 note (stating "[t]hat discovery should not be a 'one-way street' . . . .) (quoting *Jones v. Superior Court*, 58 Cal. 2d 56, 60 (Cal. 1962)).

The People's opposition to Defendant's demand for a private review of the evidence implicates *Wardius* because discovery is currently lopsided in the People's favor. It is presumed that, in conducting its review of the material in preparation for trial, the People do not also have Defendant and his counsel present in the room where it happens. As a consequence, the People are not subject to the same scrutiny or potential for such scrutiny as the Defendant, and its investigators or other members of the prosecution team are free to examine the material, discuss their findings, and consult between themselves without fear of inadvertent disclosure of their

*Order* (June 14, 2021). As of the issuance of this Decision and Order, the People have not filed its witness list. As such, there is no way to tell at this time whether Detective Raval will be called as a witness in this case.

strategy and work product in the form of thoughts, ruminations, or actions (reactions and other verbal and non-verbal responses).

In marked contrast, the Defendant and his defense team have been subjected to such supervision or, at a minimum, observation. It is "fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning the refutation of the very pieces of evidence which he disclosed to the State." *Wardius,* 412 U.S. at 476. Applying the *Wardius* decision to a child pornography case, a district court in Alaska found that the defense being left alone in a room to examine the material was appropriate because "a discovery environment that provides privacy . . . complies with due process requirements." *United States v. Harvey,* 2008 WL 11395584 at *9 (D. Alaska 2008).

By comparison here, the presence of three government officials who are part of the prosecution team does not constitute a private environment providing meaningful review of the potential evidence against the Defendant. As a result, the accommodations provided to the Defendant and his counsel are unsatisfactory *because* they are constitutionally insufficient. The Defendant should enjoy the same autonomy as the prosecution to examine the same material and to be able to react spontaneously and discuss any reactions, impacts and effects to and of any such material in preparation for his defense. Therefore, the Defendant shall have the opportunity to review the material privately, subject to the strict limitations set forth herein.

As a final note of concern, the Court is struck by the People's attempt to defend their failure to produce the material in a reserved setting upon GPD's rejection or refusal to accommodate this type of review by the Defendant and his counsel at the DART Office or other government-controlled location. People's Reply Br. at 2 ("Detective Raval was recently asked

by the People if the Defendant's requests could be met by GPD and Detective Raval responded in the negative."). The Court finds this response to be an inept attempt at any justification.

The People's duty and obligation to produce discovery is not governed by the ease or difficulty of the logistics of such production, but upon notions of fairness as dictated by the Constitution and applicable statutes and case law. Therefore, having brought charges against the Defendant, the People now have the burden of prosecuting this case against him and of complying with its duty to produce "any material information in the possession or control of member of his staff *and any other persons who have participated in the investigation or evaluation of the case and who regularly report or with reference to the case have reported to his office.*" 8 G.C.A. §70.10(b)(emphasis added). As GPD and its officers are considered agents acting on behalf of the prosecution, it is the People's responsibility to provide a private review of the evidence. Merely asking Detective Raval, "can you do this?" and accepting a "respon[se] in the negative," falls woefully short of the People's obligation. See, *Laxamana*, 2001 Guam 26 ¶ 27 ("[T]he precedent is firmly established that for purposes of pretrial discovery, police agencies are considered to be agents acting on behalf of the prosecution."); *Tuncap*, 1998 Guam 13 ¶ 15 ("The prosecutor's obligations extend to material information controlled by his staff and those who report to him regularly or in reference to a particular case.").

**D. The People must provide the Defendant and his counsel the Cellebrite or Magnetic Axiom Reports.**

The Defendant is entitled to a fair trial, which includes the right to adequate representation. *Morrison*, 477 U.S. at 392-93 (Powell, J., concurring) ("As *Strickland* makes clear, the right to effective assistance of counsel is personal to the defendant, and is explicitly tied to the defendant's right to a fundamentally fair trial . . . ."). Regarding a motion to compel

in a child pornography case, the Supreme Court of Washington found that "adequate representation requires [the ability to] tell how the evidence made its way onto the computer." *Boyd*, 160 Wash. 2d at 436. Here, the Defendant requests Cellebrite or Magnetic Axiom reports partly on the basis that they contain "data [that] shows where images are created, whether they were sent to or from the device, and whether they interacted with an app within the device." Def.'s Br. at 6. This assertion was not denied by the People in their two-page reply.

In response to this request, the People state, with less than a reasonable degree of certainty, that *Detective Raval* believes "all available discovery has been provided" and if not, they "pray this Court will provide the People with time for any outstanding requests . . . ." People's Br. at 2. It is the People's obligation, not GPD's, to ensure that all discovery has been provided to the Defendant in order to allow him to adequately prepare for trial. Instead of confirming that all discovery has been turned over to the Defendant, the Court instead has more questions: Did Detective Raval make a "renewed effort to look" for the Cellebrite or Magnetic Axiom Reports or confirm that such materials do not exist upon her return to work, as indicated by the People in its March 1, 2022, Response? Or shall the Defendant be required to simply assume they do not exist because no further information has been provided?

The discovery cut-off date in this case was set by the Court on February 15, 2022. *Crim. Trial Sched. Order* (June 14, 2021). The People have had more than enough time to fulfill their discovery obligations, either by stating that such evidence exists and that physical control or access over such materials has been asserted, or by stating unequivocally that no such data, discovery or evidence exists. The Defendant has been requesting these reports since June 15, 2021. Def.'s Decl. ¶ 3. At the time of Defendant's Reply to the People's Opposition, almost an entire year later, the Defendant had still not received these materials. Def.'s Reply Br. at 3.

(Mar. 10, 2022). Moreover, in at least one instance, the Defendant followed up with the People in an attempt to secure the reports, but the People failed to adequately address the request in their response. Def.'s Decl. ¶ 9. "The discovery statutes require a prosecutor's diligent review of the discovery and both timely responses and *complete admissions* as to whether information will or will not voluntarily be disclosed. This is especially true when discovery requests are made that specifically identify the items sought." *Tuncap*, 1998 Guam 13 ¶ 32 (emphasis added). "This failure to properly communicate is contrary to the goals of Guam's statutes." *Id.* at ¶ 33.

The People are not expected to produce discovery which does not exist; however, the People continue to fail to state, with any conviction, that the request cannot be fulfilled because the evidence does not exist. If there are Cellebrite or Magnetic Axiom reports as the Defendant seeks, these shall be furnished to the Defendant under 8 GCA § 70.10(a)(4) and 8 GCA § 70.15. On the other hand, if there are no such reports, then the People must state so unequivocally so that the Defendant can prepare accordingly and the Court need not expend valuable resources on a motion to compel discovery which does not exist.

## IV.   CONCLUSION

For the reasons stated herein, the Court GRANTS Defendant's Motion to Compel, subject to reasonable limitations as proposed by Defendant and adopted by this Court, as set forth herein.

**IT IS THEREFORE ORDERED** as follows:

1. The People shall make the subject material available to Defendant, Defense Counsel and a defense expert, on a reasonable date and time,

2. To be viewed exclusively at a government-controlled facility, which shall be identified by the People,

3. The Defendant and his defense counsel and defense expert (if any) shall be permitted to view the subject material privately in such government-controlled facility, without observation or supervision by the prosecution or its agents while such review is being conducted by Defendant, defense counsel and defense expert,

4. Such controlled, government facility or location shall allow Defendant, his counsel and his expert to view the material without subjecting them to being recorded or viewed by CCTV or other means of video or audio observation,

5. The People shall provide the equipment and software to permit Defendant, defense counsel and defense expert to meaningfully review the material as it exists, without editing or other revisions,

6. The People shall provide a mirror image drive with the material for Defendant, defense counsel, and defense expert to use as a working copy to be viewed only at the government-controlled facility, employing the same conditions as set forth herein; however, the People shall cause such mirror image drive to be secured as though it is the original form of the evidence, except that such mirror image drive shall only be accessible to the Defendant, defense counsel and defense expert.

The Court finds these conditions and the above procedure which shall govern the Defendant and defense counsel's review of the material to be reasonable as it equips the Defendant with access to substantive material needed to prepare an adequate defense, while also

minimizing any further dissemination of the alleged illicit material so as to avoid the minor's potential re-victimization. Apart from the mirror image drive that shall be furnished by the People and remain secured at government facilities at all times, no other copies shall be made.

Moreover, the Court emphasizes that access to the material is permitted only for the limited purpose of adjudicating these charges against the Defendant. The Defendant shall only be allowed access to the material under defense counsel's supervision and within the strict procedures and safeguards set forth herein.

Finally, with respect to any outstanding discovery, including, but not limited to the any Cellebrite or Magnetic Axiom reports, the People shall provide such discovery and reports to Defense Counsel within thirty (30) days of this Decision and Order. Failure to comply as commanded herein may subject the People to sanctions as may be deemed appropriate by this Court pursuant to 8 GCA § 70.45, 7 GCA § 34101 or any other applicable rule or statute.

SO ORDERED this 23rd day of June, 2022.

HONORABLE MARIA T. CENZON
Judge, Superior Court of Guam